## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Rosario Madison,                                )
                                                )
                    Plaintiff,                  )
                                                )
            v.                                  ) Case No. 1:08-cv-001112-PLF
                                                )
Specialty Hospital of Washington, L.L.C.,       )
and Specialty Hospital of Washington–Nursing    )
Center, L.L.C.,                                 )
                                                )
                    Defendants.                 )

# PLAINTIFF'S APPLICATION TO THE CLERK OF COURT FOR THE STRIKING OF DEFENDANTS' UNTIMELY ANSWER, AND ENTRY OF DEFAULT, AND OF DEFAULT JUDGMENT, AGAINST DEFENDANTS

Pursuant to Rule 5(d)(1), Fed. R. Civ. Pro., Local Civil Rule 5.3, and Local Civil Rule 5.4, plaintiff applies to the Clerk for the striking of defendant's untimely May 21, 2008, Answer, for lack of any showing that actual service was made on May 21, 2008, or about the time of filing, and in light of the fact that the then *pro se* plaintiff has not received service by mail.  If defendants timely served their Answer on plaintiff and the delay in receipt is simply due to mail delays, defendants may still file a Certificate of Service.  Alternatively, if plaintiff subsequently receives the Answer in the mail, she will inform the Court.  Plaintiff raises the possibility of a failure of service at the earliest possible time, to avoid any possible contention of waiver.

Pursuant to Rule 7.1, Fed. R. Civ. Pro., and Local Civil Rule 7.1, plaintiff applies to the Clerk for the striking of defendant's untimely May 21, 2008, Answer, for lack of the required disclosure statement.

Pursuant to Rule 55(a), Fed. R. Civ. Pro., plaintiff applies to the Clerk for the striking of defendants' untimely Answer, the entry of default against defendants for failure to plead or otherwise respond to the Complaint within twenty days after service of the Complaint on defendants.  In the event the application is denied, plaintiff will file an appropriate Motion with the Court.

Pursuant to Rule 55(b)(1), Fed. R. Civ. Pro., plaintiff applies to the Clerk for the entry of default judgment against defendants for the relief demanded in the Complaint, and requests the entry of judgment for that amount and costs.  In the event the application is denied, plaintiff will file an appropriate Motion with the Court.

WHEREFORE, plaintiff prays that her Motion be granted.  The declaration of counsel, a Memorandum of Points and Authorities, and a proposed form of Judgment, are submitted herewith.

>                                Respectfully submitted,


>        **/s/**_____
>        Richard T. Seymour (DC Bar No. 028100)
>        Law Office of Richard T. Seymour, P.L.L.C.
>        1150 Connecticut Avenue N.W., Suite 900
>        Washington, D.C.  20036-4129
>          Voice: 202-862-4320
>          Cell:   202-549-1454
>          Facsimile:  800-805-1065 and 202-828-4130
>          e-mail: rick@rickseymourlaw.net


Dated: May 26, 2008

## Certificate of Service

I hereby certify that I have this 26th day of May, 2008, served counsel of record for defendant, listed below, with a copy of the foregoing Plaintiff's Application to the Clerk of Court for the Striking of Defendant's Untimely Answer, the Entry of Default, and the Entry of Default Judgment, Against Defendants, declaration of counsel, Memorandum in support, and proposed form of Judgment, by uploading these documents through the Court's ECF system.

Karla Grossenbacher #442544
Elisabeth Moriarty-Ambrozaitis # 488848
SEYFARTH SHAW LLP
815 Connecticut Avenue, NW, Suite 500
Washington, DC 20006

**/s/**_____
Richard T. Seymour (DC Bar No. 028100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
  Voice: 202-862-4320
  Cell:   202-549-1454
  Facsimile:  800-805-1065 and 202-828-4130
  e-mail: rick@rickseymourlaw.net

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rosario Madison, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-001112-PLF |
| | ) |
| Specialty Hospital of Washington, L.L.C., | ) |
| and Specialty Hospital of Washington–Nursing | ) |
| Center, L.L.C., | ) |
| | ) |
| Defendants. | ) |

# <u>DECLARATION OF RICHARD T. SEYMOUR</u>

| | |
|---|---|
| City of Washington | ) |
| | ) ss: |
| District of Columbia | ) |

I make the following declaration subject to the penalties for perjury in the laws of the United States of America.

1.     I entered my appearance today as counsel of record for plaintiff Rosario Madison.

2.     I obtained the file of former counsel for plaintiff, and found Affidavits of Service made by Thomas Parks, Capitol Process and Investigator Services, stating that on April 30, 2008, he personally served the Summons and Complaint on both defendants in this case, through their registered agents who were authorized to accept process.

3.     Defendants' deadline to file their Answer or otherwise respond to the Complaint was May 20, 2008.

4.     Defendants did not file any answer or motion by May 20, 2008.  Instead, their Answer was filed on May 21, 2008.

5.    Defendant's untimely Answer was itself defective, in the following respects:

a.    It did not contain the Certificate of Service required by Rule 5(d), Fed. R. Civ. Pro. or by Local Civil Rule 5.3;

b.    Despite the fact that plaintiff was known to be unrepresented as of May 21, and is not registered on the Court's ECF system, defendants did not submit the special Certificate of Service required by Local Civil Rules 5.4(d)(1) and (2);

c.    It is possible that defendants may not in fact have attempted to serve plaintiff by mail or otherwise on May 21, 2008, because plaintiff has informed me that she has not yet received a copy of defendant's Answer in the mail or by personal service, and a mailing on May 21 could have reached plaintiff by May 22, 23, or 24;

d.    Defendants have not submitted the Disclosure Statement of nongovernmental corporate parties required to be filed with defendants' first pleading, as required by Rule 7.1, Fed. R. Civ. Pro., and by Local Civil Rule 7.1.

6.    As of this filing, defendants had not corrected any of the defects in their untimely Answer.

7.    The law firm of record for defendants at the time of their untimely and defective Answer was not new to the matter.  I have obtained from the U.S. Equal Employment Opportunity Commission District Office in Birmingham, Alabama, to which the case was transferred, a Position Statement dated July 26, 2007, setting forth the defendants' position on plaintiff's charges of discrimination against them.  That is the

only document I have so far received from the EEOC's investigative file. The Position Statement was submitted to the EEOC almost ten months ago by the same law firm that now represents defendants in this litigation.

8.    Defendants' untimely Answer asserts a facial reason why judgment should not be entered against it: that they were not plaintiff's employers and that an entity called Capitol Hill Healthcare Group d/b/a Capital hill Nursing Center was her employer. However defendants' July 26, 2007, eight-page Position Statement to the EEOC never even mentioned Capitol Hill Healthcare Group or the Capital hill Nursing Center, and responded as if plaintiff had been employed by defendants.

9.    A copy of defendants' July 26, 2007, eight-page Position Statement to the EEOC is attached hereto, for the limited purposes of (1) showing that defense counsel represented defendants on this matter for almost ten months before their untimely filing, and (2) showing that defendants' position to the EEOC was that they were plaintiff's employer.

10.    The Complaint sought back pay, front pay, compensatory damages in the amount of $300,000, punitive damages in the amount of $300,000, postjudgment interest, a fee award, costs, and such other and further relief as the nature of the case may require.

//

Plaintiff seeks judgment in the amount of the $600,000 claimed for compensatory and

punitive damages, and in the event of such judgment will not seek a computation of back

pay or front pay.

/s/_____

Richard T. Seymour (DC Bar No. 028100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
  Voice: 202-862-4320
  Cell:    202-549-1454
  Facsimile:  800-805-1065 and 202-828-4130
  e-mail: rick@rickseymourlaw.net

Dated: May 26, 2008



815 Connecticut Avenue, N.W.

Suite 500

Washington, D.C. 20006-4004

202-463-2400

fax 202-828-5393

www.seyfarth.com

Writer's direct phone
(202) 828-5338

Writer's e-mail
scohen@seyfarth.com

July 26, 2007

VIA E-MAIL
AND FIRST CLASS MAIL

Aaron Hallaway
CRTIU Coordinator
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd St. South, Suite 2000
Birmingham, AL 35205
aaron.hallaway@eeoc.gov

Re:    Rosario Madison; EEOC Charge 570-2007-00401

Dear Mr. Hallaway:

This confidential letter and the accompanying documents set forth the position of the Respondent, Specialty Hospital of Washington and Nursing Center – Capitol Hill, ("SHW"), with respect to the amended charge of discrimination filed by Charging Party Rosario Madison in the above-referenced case.[1]

In November 2006, Charging Party filed a charge of discrimination alleging that she had been discriminated against on the basis of her sex (female) and national origin and race (Hispanic) in violation of Title VII of the Civil Rights Act of 1964. As set forth in SHW's position statement dated February 12, 2007, Charging Party's claims of discrimination are completely meritless and, as a result, should be dismissed. On June 14, 2007, Charging Party amended her charge to add a claim of retaliatory termination. As demonstrated below, Charging Party's termination was the result of her own failure to request dates to be scheduled to work, as she was required to do as a PRN. The motivation for Charging Party's termination was legitimate, nondiscriminatory, and nonretaliatory. Accordingly, the amended charge should be promptly dismissed.

---

[1] This position statement is based upon the undersigned's understanding of the allegations and investigation to date. By submitting this statement of position, SHW does not waive its right to present new, different, or additional facts, defenses, or arguments based upon subsequently acquired information or evidence. Additionally, this position statement is submitted for purposes of potential conciliation and/or resolution pursuant to Rule 408 of the Federal Rules of Evidence. Accordingly, the statements contained herein are privileged and confidential.

BRUSSELS   WASHINGTON, D.C   SAN FRANCISCO   SACRAMENTO   NEW YORK   LOS ANGELES   HOUSTON   CHICAGO   BOSTON   ATLANTA

Aaron Hallaway
July 26, 2007
Page 2



## I.  Factual Background

SHW (formerly known as MedLINK Hospital and Nursing Center) is a regional, long-term acute care hospital providing extended care to patients who are discharged from area acute care hospitals and surgical centers. SHW's patients possess highly acute, medically complex conditions that require cardiopulmonary/ventilator care, wound care, and medically complex patient management. The SHW Nursing Center, where Charging Party worked, is a nursing facility that specializes in restorative/rehabilitative services in a caring and home-like environment to help its residents achieve their optimum level of wellness and independence.

SHW is committed to ensuring that its workplace is free from unlawful discrimination, harassment, and retaliation. To this end, SHW maintains a Policy Against Sexual Harassment and Other Workplace Harassment, in addition to Equal Employment Opportunity and Discrimination policies, which Charging Party received. (See Attachment A.)  The Policy Against Sexual Harassment and Other Workplace Harassment forbids any unwelcome conduct that is based on an individual's race, sex or gender, national origin, or any other status protected by applicable law. This Policy sets forth a reporting procedure, which provides that individuals who feel that they have experienced or witnessed any conduct inconsistent with the policy are to immediately notify Human Resources or Administration and provides that SHW will take appropriate action. Significantly, the Policy explicitly states that retaliation for reporting harassment or invoking other protected rights is forbidden and informs individuals who experience or witness any conduct that they believe to be retaliatory to immediately follow the reporting procedure identified in the policy. SHW's Discrimination and Equal Employment Opportunity policies confirm that discrimination is prohibited and provides a complaint procedure for raising concerns of discrimination.

Charging Party was hired on July 23, 2006 as a PRN Certified Nursing Assistant for SHW's Nursing Center. PRNs are not regularly scheduled employees. Instead, PRNs are scheduled on an as-needed basis, *e.g.*, to cover for absences and vacations for regular staff, to provide extra staff during busy periods. As a PRN, Charging Party was responsible for calling SHW to let them know when she was available to work.

As explained more fully in SHW's February 12, 2007 position statement, Charging Party approached Regina Bines, Director of Nursing for SHW's Nursing Center on October 2, 2006, to express a concern. Charging Party told Ms. Bines that she thought that she and a co-worker, Patrick Lumbasi, shared feelings for each other and spoke about personal matters with each other. Charging Party also stated that she had hugged Mr. Lumbasi and let him touch her hair. Charging Party further alleged that Mr. Lumbasi had an erection one day when they were both in the trash room. Notably, when Ms. Bines asked Charging Party if she felt that she was in a hostile work environment or that Mr. Lumbasi was harassing her in any way, Charging Party replied, "no, no, never. I just think he has more feelings for me." Similarly, when asked if Mr. Lumbasi had made any advances, touched her, or made statements that made her feel as though she had been violated in any way, Charging Party replied, "no, you don't understand. I think he has a lot of feelings for me...he has never done anything like that to me." She denied that Mr. Lumbasi made any inappropriate statements or advances toward her. Charging Party explained that the resolution she wanted was for Mr. Lumbasi to stop talking to her. She said that this was all that she wanted and



that she did not want Mr. Lumbasi to get in trouble. Ms. Bines told Charging Party that she would speak with Mr. Lumbasi and tell him of her preferences. Charging Party indicated that this is what she would like to have happen. Ms. Bines also informed Charging Party that SHW would schedule them on different units and said that she should keep her distance from Mr. Lumbasi. She further told Charging Party that she should report if she ever felt uncomfortable, and Charging Party indicated that she would. Finally, Ms. Bines instructed Charging Party that if, for some reason, they were ever on the same unit, she should notify her supervisor. Charging Party said that she would do so.

The following day, Ms. Bines and a supervisor met with Mr. Lumbasi to ask him about Charging Party's allegations. Mr. Lumbasi said that nothing had ever occurred between them. He further stated that he was not aware of an incident in which he had an erection in Charging Party's presence. He denied making any statements or advances or engaging in harassment of Charging Party in any way. Mr. Lumbasi explained that he and Charging Party had a cordial relationship. He stated that they had casual to intimate conversations, and that both of them had initiated such conversations. He explained that they had shared pictures and information with each other about their families, but that he thought they both felt the same way about their friendship. Ms. Bines explained that this was not to occur at work, and Mr. Lumbasi assured her that it would not happen again. Ms. Bines further informed Mr. Lumbasi that he and Charging Party would be assigned to separate units and that he was to keep his distance from Charging Party, and that she had been instructed to do the same thing. Ms. Bines also informed Mr. Lumbasi that he should notify the charge nurse/supervisor if they were on the same unit. Mr. Lumbasi acknowledged his understanding of what was expected.

On October 6, 2006, Charging Party approached Ms. Bines and said that Mr. Lumbasi would not talk to her or look her way. Ms. Bines explained that Mr. Lumbasi was merely complying with her instruction, which is what Ms. Bines understood that Charging Party wanted. At no subsequent time did Charging Party make a complaint or express a concern to SHW management about Mr. Lumbasi's behavior toward her.[2]

Although Charging Party never informed SHW of any further concerns about Mr. Lumbasi, she apparently filed a complaint with the police. On January 5, 2007, the D.C. police came to SHW.[3] Ms. Bines and the Nursing Center Administrator met with Charging Party on that date.

---

[2] Charging Party's charge contains several allegations of harassment that were never reported to SHW. For example, Charging Party never informed SHW that Mr. Lumbasi said that she was a beautiful and sexy Hispanic and that "you can probably can [sic] dance." Likewise, Charging Party never informed SHW that Mr. Lumbasi made kissing noises and said he wanted to kiss her all over her body or that he tried to hug and kiss her. Charging Party alleges that she told Mr. Lumbasi to stop, but when discussing her concerns with Ms. Bines, she said that she had never told Mr. Lumbasi to stop. In addition, Charging Party never informed SHW of the September 19, 2006 allegations described in her charge.

[3] The incidents surrounding the police department's investigation and presence on SHW property is more fully explained in SHW's February 12, 2007 position statement.



Charging Party said that she wanted them to allow her to leave to get herself together. Ms. Bines told Charging Party that she could leave and that she should call her when she was ready to return. Charging Party asked if she was being fired. Ms. Bines responded that she was not being fired and that she was a PRN who would be used as needed.

Charging Party not only failed to report for her subsequently scheduled work days, but she never called back to inform SHW of her availability for further dates to be scheduled to work. Consistent with SHW's practice, Charging Party was terminated on April 18, 2007 because she failed to fulfill her PRN obligation of providing dates on which she was available to work. (See Attachment B.)

## II.   Charging Party's Claims are Factually and Legally Baseless and Must be Dismissed.

### A.   Charging Party's Allegations of Harassment Must be Dismissed.

In her amended charge, Charging Party alleges that Mr. Lumbasi sexually harassed her and that SHW failed to take action to stop the sexual harassment. These claims are not only patently false, they are legally insufficient to state a claim of harassment.

#### 1.   Charging Party's Harassment Allegations are Factually Meritless.

To begin, the allegations of harassment in Charging Party's amended charge are complete fantasy. In Charging Party's October 2006 meeting with Ms. Bines, she said that she "never" felt she was in a hostile work environment or that Mr. Lumbasi was harassing her in any way. She denied that Mr. Lumbasi had ever made any advances, touched her, or made statements that made her feel as if she had been violated in any way. Charging Party explained, "I think he has a lot of feelings for me...he has never done anything like that to me." Contrary to Charging Party's allegation in her charge, she told Ms. Bines that she never told Mr. Lumbasi to stop. In fact, Charging Party reported to Ms. Bines that she had hugged Mr. Lumbasi and let him touch her hair. At the end of the meeting, Charging Party was told to report any future instances that made her feel uncomfortable. Notably, at no time during Charging Party's October 2, 2006 meeting with Ms. Bines or at any time thereafter did Charging Party present the version of allegations that now appear in her amended charge of discrimination. This seriously calls into question the veracity of Charging Party's current charge of harassment.

Likewise, Charging Party's allegation that SHW failed to take action to stop the sexual harassment is completely belied by the facts. Upon learning of Charging Party's concerns, Ms. Bines promptly met with Charging Party and then with Mr. Lumbasi. Consistent with Charging Party's stated wishes in her October 2, 2006 meeting with Ms. Bines, Mr. Lumbasi was informed that he should refrain from interacting with Charging Party. Moreover, SHW did not schedule Charging Party and Mr. Lumbasi on the same unit. After the October 2, 2006 meeting, Charging Party made absolutely no complaints to SHW of harassment by Mr. Lumbasi. Based on the foregoing, SHW reasonably believed that it had taken appropriate and effective action in response to Charging Party's concerns.



### 2. Charging Party's Harassment Allegations are Legally Insufficient.

To sustain a claim of hostile work environment harassment, the workplace must be permeated with discriminatory behavior that is sufficiently severe or pervasive to create an abusive environment under both a reasonable person objective standard as well as a subjective standard where the victim perceives the environment to be abusive. *Harris v. Forklift Systems*, 510 U.S. 17 (1993). "[T]he alleged incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *See Carter v. Greenspan*, 304 F. Supp.2d 13, 24 (D.D.C. 2004). "Standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Because Charging Party cannot establish that she suffered severe or pervasive harassment or that her work environment was abusive (using either an objective or subjective standard), her harassment claim must be dismissed as a matter of law.

Even assuming for the sake of argument that Charging Party's allegations are true, they do not amount to sufficiently severe or pervasive behavior to create a legally actionable harassment claim. Charging Party's allegations amount to a few isolated comments and incidents by a co-worker in September of 2006 which, in accordance with applicable law, are not sufficiently continuous and concerted to be deemed pervasive. As a result, Charging Party cannot even establish a viable claim of harassment based on the face of her charge.

Moreover, Charging Party's statements to Ms. Bines completely undermine her ability to establish that Mr. Lumbasi created an abusive work environment for her. Significantly, Charging Party reported to Ms. Bines that she never felt she was in a hostile work environment or that Mr. Lumbasi was harassing her in any way. She denied any inappropriate advances, touching, or statements by Mr. Lumbasi. In fact, Charging Party stated that she herself had hugged Mr. Lumbasi and let him touch her hair. She further indicated that they shared feelings for each other. The picture painted by Charging Party at the time of her conversation with Ms. Bines was that she and Mr. Lumbasi mutually developed a personal relationship, but that Charging Party wanted to end that relationship.[4] There was absolutely no indication that Mr. Lumbasi was subjecting Charging Party to behavior that she found to be abusive. Accordingly, Charging Party cannot establish that she was the victim of harassment.

Finally, even if Charging Party could establish a claim of harassment (which she cannot), SHW is not liable for any such harassment because it exercised reasonable care to prevent and promptly correct any harassment, and Charging Party unreasonably failed to avail herself of corrective or preventive opportunities provided by the employer or to avoid harm otherwise. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-07 (1998). SHW exercised reasonable care to prevent harassment by establishing and maintaining its Policy Against Sexual Harassment and Other Workplace Harassment. Charging

---

[4] In Charging Party's meeting with Ms. Bines, she explained that both she and Mr. Lumbasi were married and that Charging Party's husband had informed her that she was too friendly with Mr. Lumbasi.

May-21-2008 04:37pm From-EEOC
Case 1:08-cv-00112-PLF     Document 8-2     +2052122105     T-197  P.006/008  F-226
Filed 05/26/2008     Page 10 of 12

Aaron Hallaway
July 26, 2007
Page 6



Party received a copy of this Policy and signed an acknowledgment indicating that she had read, understood, and agreed to comply with the policy. The policy forbids harassment based on sex, race, national origin, and any other legally protected status, explains the kinds of behaviors that are inconsistent with the policy, provides a reporting procedure, and forbids retaliation for reporting harassment (among other things). However, Charging Party failed to promptly report her concerns about Mr. Lumbasi pursuant to the Employee Responsibility and Reporting Procedure sections of the policy. Moreover, Charging Party failed to inform SHW of the allegations of harassment set forth in her amended charge pursuant to the policy. Thus, Charging Party plainly failed to avail herself of corrective or preventive opportunities provided by SHW. Once Charging Party finally decided to report her concerns to SHW (which, as mentioned above, was markedly different from the harassment allegations in her charge), SHW exercised reasonable care to address Charging Party's concerns. Specifically, Ms. Bines spoke with Charging Party and Mr. Lumbasi about Charging Party's concerns, instructed the parties to keep their distance from each other, and scheduled them to be in separate areas. In addition, Ms. Bines informed Charging Party to let her know if any future events made her feel uncomfortable. Notably, Charging Party failed to raise any future concerns of harassing behavior by Mr. Lumbasi. If any future events did occur, Charging Party failed to avail herself of SHW's corrective and preventive opportunities because she never provided SHW of any such information. In sum, SHW exercised reasonable care to prevent and promptly correct any harassment, whereas Charging Party unreasonably failed to avail herself of corrective and preventive opportunities provided by SHW. As a result, SHW cannot be held liable for any harassment by Mr. Lumbasi and, therefore, the charge must be dismissed.

## B.   Charging Party's Retaliation Claim Must be Dismissed.

Charging Party's allegation in her amended charge that she was terminated in retaliation for complaining about Mr. Lumbasi is utterly specious. Accordingly, her retaliation claim should be squarely rejected.

To begin, Charging Party's factual allegations concerning her termination are outright fabrications. Charging Party's supervisor did not terminate her employment by requesting that she leave the hospital on January 5, 2007, as alleged in the amended charge. As explained above, when Charging Party asked Ms. Bines if she was being fired on January 5, 2007, Ms. Bines replied that she was not being fired. Nor did Charging Party's supervisor refuse to allow her to return to work, as Charging Party claims. In fact, contrary to Charging Party's charge, she never attempted to return to work after January 5, 2007. On January 5, 2007, Charging Party told her supervisor and the Administrator that she wanted them to allow her to leave to get herself together. Ms. Bines told Charging Party that she could leave and that she should call her when she was ready to return. However, Charging Party not only failed to report for her subsequently scheduled work days, but she never called Ms. Bines to provide available dates that she was available to be scheduled for work. Consistent with SHW's practice, Charging Party was terminated on April 18, 2007 because she failed to fulfill her PRN obligation of providing dates on which she was available to work.

To establish a legally viable claim of retaliatory discharge, Charging Party must show that (1) she engaged in protected activity, (2) she was terminated, and (3) there was a causal connection between her protected activity and her termination. *See McIntyre v. Peters*, 460 F. Supp. 2d 125,



133 (D.D.C. 2006). Because Charging Party cannot prove the protected activity or the causal connection requirements, her retaliation claim must be dismissed.

Charging Party's "complaint" about Mr. Lumbasi does not constitute protected activity. To be protected activity, the complaint must allege unlawful discrimination or harassment. *See McIntyre v. Peters*, 460 F. Supp. 2d at 134. Charging Party made no such allegation in her meeting with Ms. Bines in October 2006. To the contrary, Charging Party repeatedly denied that Mr. Lumbasi created a hostile work environment, touched her, or made inappropriate statements or advances. Charging Party was merely concerned that Mr. Lumbasi had feelings for her and wanted him to stop talking to her. This does not amount to an opposition of a practice that violates Title VII and, therefore, does not constitute protected activity. *See McIntyre v. Peters*, 460 F. Supp. 2d at 132-34. As a result, Charging Party cannot prove a claim of retaliation.

Even assuming solely for the sake of argument that Charging Party's "complaint" constituted protected activity, her retaliation claim nonetheless must be rejected because there is no causal connection between the complaint and her termination. Charging Party has provided no direct evidence to establish a connection between her complaint and her termination.[5] Without such evidence, the temporal proximity between the complaint and termination must be "very close" – *i.e.*, three months or less -- to establish a causal connection. *See McIntyre v. Peters*, 460 F. Supp. 2d at 133; *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 105 (D.D.C. 2005). Because Charging Party was terminated over six months after her "complaint," she cannot prove the necessary causal connection to pursue a retaliation claim.

Finally, the facts demonstrate that the reason for Charging Party's termination was her own failure to provide her availability to work, as PRNs are required to do. Consistent with SHW's practice, Charging Party was terminated because she failed to fulfill her PRN obligation. This is a legitimate, non-retaliatory (and non-discriminatory) reason for Charging Party's termination, which completely eviscerates Charging Party's manufactured claim of retaliatory discharge.

## III.   Conclusion

As the foregoing position statement and attached documents -- along with SHW's February 12, 2007 position statement and attached documents -- demonstrate, Charging Party's allegations of discrimination and retaliation are wholly without merit. Accordingly, Charging Party's claims should be rejected and her charge should be promptly dismissed.

---

[5] It is worth noting that Mr. Lumbasi was not in a supervisory position and had no role in Charging Party's termination.



If you have any questions, please contact me.

Very truly yours,

SEYFARTH SHAW LLP

Susan J. Cohen

cc:     Margaret Fisher
        Joseph R. Damato, Esq.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rosario Madison, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-001112-PLF |
| | ) |
| Specialty Hospital of Washington, L.L.C., | ) |
| and Specialty Hospital of Washington–Nursing | ) |
| Center, L.L.C., | ) |
| | ) |
| Defendants. | ) |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION TO THE CLERK OF COURT FOR THE STRIKING OF DEFENDANTS' UNTIMELY ANSWER, AND ENTRY OF DEFAULT, AND OF DEFAULT JUDGMENT, AGAINST DEFENDANTS

**A.**    **Defendants' Untimely Answer Should be Stricken if No Mail or Personal Service Was Made on the Then *Pro Se* Plaintiff on May 21, 2008**

Rule 5(d)(1), Fed. R. Civ. Pro., provides as follows:

> **(d) Filing.**

> **(1) Required Filings; Certificate of Service.** Any paper after the complaint that is required to be served--together with a certificate of service--must be filed within a reasonable time <u>after</u> service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.

(Emphasis supplied.)

Local Civil Rule 5.3 provides:

## PROOF OF SERVICE

Proof of service of papers required or permitted to be served, other than those for which a different method of proof is prescribed by the Federal Rules of Civil Procedure or by statute, shall be filed with such papers. The proof shall show the date and manner of service, and may be by certificate of an attorney of record or other proof satisfactory to the Court. Failure to make proof of service does not affect the validity of service. The Court may at any time allow the proof to be amended or supplied, unless to do so would unfairly prejudice a party.

Thus, if defendants timely served their Answer on plaintiff and the delay in receipt is

simply due to mail delays, defendants may still file a Certificate of Service.

Alternatively, if plaintiff subsequently receives the Answer in the mail, she will inform

the Court.  Plaintiff raises the possibility of a failure of service now, to avoid any possible

contention of waiver.

Local Civil Rule 5.4(d) provides:

**(d) SERVICE**

(1) Electronic filing of any document operates to effect service of the document on counsel or pro se parties who have obtained CM/ECF passwords. Counsel or parties who have not yet obtained CM/ECF passwords must serve and be served as otherwise provided in F.R.Civ.P. 5(b).

(2) The requirement of a certificate or other proof of service is satisfied by the automatic notice of filing sent by the CM/ECF software to counsel or pro se parties who have obtained CM/ECF passwords. A separate certificate or other proof of service showing that a paper copy was served on a party or counsel is required when that party or counsel does not receive electronic notification of filings.

(Emphasis supplied.)

**B.** **Defendants' Untimely Answer Should Be Stricken for Lack of the Required Disclosure Statement**

Rule 7.1, Fed. R. Civ. Pro., provides as follows:

**Rule 7.1. Disclosure Statement**

**(a) Who Must File; Contents.** A nongovernmental corporate party must file two copies of a disclosure statement that:

**(1)** identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or

**(2)** states that there is no such corporation.

**(b) Time to File; Supplemental Filing.** A party must:

**(1)** file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and

**(2)** promptly file a supplemental statement if any required information changes.

Local Rule 7.1 provides:

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

In all civil or agency cases where a corporation is a party or intervenor, counsel of record for that party or intervenor shall file a certificate listing any parent, subsidiary or affiliate of that party or intervenor which, to the knowledge of counsel, has any outstanding securities in the hands of the public. Such certificate shall be filed at the time the party's first pleading is filed.

The purpose of this certificate is to enable the judges of this court to determine the need for recusal. Counsel shall have the continuing obligation to advise the court of any change. The form of the certificate is:

"Number and Title of Case"

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel of record for _____, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of _____ which have any outstanding securities in the hands of the public.

(Here list all such parent companies, subsidiaries and affiliates of the corporation.)

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record for _____

## C.    The Clerk Should Enter Default and Default Judgment

Rules 55(a) and (b)(1), Fed. R. Civ. Pro., provide as follows:

**Rule 55.        Default; Default Judgment**

**(a) Entering a Default.**  When a party against whom a judgment for for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

**(b) Entering a Default Judgment.**

*(1) By the Clerk.*  If the plaintiff's claim is for a sum certain, or for a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

## D.    Equity Requires that Well-Represented Defendants Not Be Given Treatment More Favorable than *Pro Se* Plaintiffs

The Order of May 15, 2008, allowed the withdrawal of plaintiff's former counsel because plaintiff did not respond to his motion for leave to withdraw within five days, plaintiff was notified of a reference to Local Civil Rule 83.6(c), and plaintiff was presumed familiar with the five-day requirement contained therein.

The Order of May 15, 2008, ordered plaintiff to file by May 26, 2008—Memorial Day—a statement whether she wished to proceed *pro se*, or to have an attorney file a Notice of Appearance, or her case would be dismissed.  Plaintiff received a copy of the Order from the Clerk's Office on May 21, 2008.  Again, she had five days, over a holiday weekend, to take action.  Plaintiff was not notified of the provision of Rule 6(a)(3), Fed.

R. Civ. Pro., changing the deadline to May 27, which is the only way she could have filed a statement preserving her case if unable to obtain counsel since she is not on the ECF system and could not be expected to know of drop boxes available on holidays.  Again, she was presumed familiar with court rules.

Where a pro se plaintiff is held to stringent standards, well-represented corporations should be held to standards no less stringent.

WHEREFORE, plaintiff prays that her Motion be granted.

Respectfully submitted,

**/s/**_____
Richard T. Seymour (DC Bar No. 028100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
 Voice: 202-862-4320
 Cell:   202-549-1454
 Facsimile:  800-805-1065 and 202-828-4130
 e-mail: rick@rickseymourlaw.net

Dated: May 26, 2008

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rosario Madison, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-001112-PLF |
| | ) |
| Specialty Hospital of Washington, L.L.C., | ) |
| and Specialty Hospital of Washington–Nursing | ) |
| Center, L.L.C., | ) |
| | ) |
| Defendants. | ) |

# CLERK'S STRIKING OF ANSWER, ENTRY OF DEFAULT, AND ENTRY OF DEFAULT JUDGMENT, AGAINST DEFENDANTS____

The untimely Answer of May 21, 2008, is stricken as defective for the reasons set forth in plaintiff's Application.

Pursuant to Rule 55(a), Fed. R. Civ. Pro., defendants are in default.

Pursuant to Rule 55(b)(1), Fed. R. Civ. Pro., judgment is hereby entered against defendants for $300,000 in compensatory damages and $300,000 in punitive damages.  It is therefore hereby ORDERED, that plaintiff Rosario Madison recover jointly from defendants the amount of $600,000, with postjudgment interest at the rate of _____%, along with $350 in costs, in the amount of the filing fee.

Plaintiff's application for attorneys' fees must be filed within 14 days of the entry of this Judgment.

_____
Nancy M. Mayer-Whittington
Clerk, U.S. District Court

Dated: _____, 2008